Manchester Township, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; Commonwealth of Pennsylvania, Department of Transportation, Intervenor.
County of York, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; Commonwealth of Pennsylvania, Department of Transportation, Intervenor.

Argued March 7, 1979, before President Judge BOWMAN and Judges WILKINSON. JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*Wayde P. Seidensticker,* with him *Seidensticker and Roe,* for petitioner, Manchester Township.

*Lewis P. Sterling,* Solicitor, for petitioner, York County.

*John J. Gallagher,* with him *Harvey S. Miller,* Assistant Counsel, *John B. Wilson,* Assistant Counsel, and *George M. Kashi,* Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, May 30, 1979:

The County of York (County) and Manchester Township (Township) both appeal from a decision of the Public Utility Commission (PUC) which ordered

them to share the cost of improvements to a highway-rail crossing. The cases have been consolidated for the purpose of this appeal.

On May 27, 1976, the Township filed a complaint with the PUC alleging that a crossing where a state highway passes underneath railroad tracks in the Township was inadequate and constituted a traffic hazard. The Township requested a complete reconstruction. Hearings were held by the PUC at which several witnesses for the Township testified as to the allegedly hazardous conditions of the crossing. The Department of Transportation (Department), an intervening party, filed an answer to the Township's complaint and presented evidence at the hearing to the effect that the crossing was not hazardous but merely inadequate and that the traffic congestion was due to improper planning and zoning by local public officials who had permitted the construction of an industrial park in close proximity to the underpass. The County appeared only at the initial hearing and requested to be dismissed as a party to the complaint, but its request was denied.

On December 8, 1977, the Administrative Law Judge of the PUC issued his proposed initial decision concluding that total reconstruction of the crossing was not warranted but that the Department should install and maintain signs reducing the speed limit in the area and should also install and maintain flashing light warning signals on both approaches to the crossing. It further directed the Department to perform a study on an alleged drainage problem at the site.[1] On December 27, 1977, the Department filed exceptions to the proposed initial decision in which it alleged that the Township and the County should be responsible

---

[1] The Department of Transportation did comply with this portion of the order.

for the cost of the improvements and the future maintenance thereof because they had permitted the construction of the industrial park which contributed significantly to the problem here concerned.

On April 14, 1978, the PUC issued its order finding that the traffic problems were the result of insufficient planning by the local government bodies and that the Township and the County, rather than the Department, were the proper parties to bear the responsibility for the cost of installation and maintenance of the signs and warning signals. The PUC adopted in full the other portions of the Administrative Law Judge's decision. This appeal followed.

Our scope of review is, of course, limited to a determination as to whether or not the decision of the PUC was supported by substantial evidence and was in accordance with the law and as to whether or not consitutional rights were violated. 2 Pa.C.S. §704.

The Township basically raises two issues: whether or not the PUC's proposed solution to the problem is supported by substantial evidence and whether or not the allocation of costs is just and reasonable. Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. *Erie Lackawanna Railway Co. v. Pennsylvania Public Utility Commission*, 2 Pa. Commonwealth Ct. 396, 278 A.2d 188 (1971). As to the first issue, we must note that the Commission held two hearings at which numerous individuals testified concerning the conditions present at the underpass. There was testimony to the effect that only one accident had been reported as occurring at one of the approaches to the crossing. The PUC found that there was insufficient evidence on the record to support the claim that a hazard existed which could *only* be corrected by reconstructing the underpass. It therefore concluded that means other

than those proposed should be employed to minimize problems in the area. Our review of the record convinces us that substantial evidence exists to support the PUC's finding that a complete reconstruction is not warranted.

Turning to the issue of allocation of costs, the authority of the PUC to apportion the costs of improvements which it orders to be made is statutory. The Public Utility Code, 66 Pa.C.S. §2702, indicates in subsection (c):

> Upon its own motion or upon complaint, the commission shall have exclusive power after hearing, . . . to order any such crossing heretofore or hereafter constructed to be relocated or altered, or to be suspended or abolished upon such reasonable terms and conditions as shall be prescribed by the commission.

How the costs should be apportioned is indicated in 66 Pa.C.S. §2704(a):

> [T]he cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine.
>
> . . .

It has consistently been held, of course, that the allocation of such costs must be just and reasonable. *Erie Railroad v. Public Service Commission*, 271 Pa. 409, 114 A. 357 (1921); *Department of Transportation v. Pennsylvania Public Utility Commission*, 21 Pa. Commonwealth Ct. 407, 346 A.2d 371 (1975). The Township contends, however, that the allocation of costs between

itself and the County is not just or reasonable because the road upon which the signals are to be installed is a state highway over which the Department has control. The Township's position is that the Commonwealth should be assessed costs with regard to the ordered improvements.

We have previously held that the PUC is not limited to any fixed rule in apportioning costs but that all relevant factors must be taken into consideration. *Department of Transportation, supra.* And we believe that there is ample evidence in the record here to support the PUC's finding that the congested conditions at the crossing are attributable to poor planning on the part of the Township and the County in approving the location of the industrial park without making adequate provisions to improve ingress and egress to it. Under these circumstances, we believe that the PUC's order allocating the cost of improvements between those most responsible for the existence of the situation causing the problem is just and reasonable.

The County contends, in its appeal, that the PUC has exceeded its authority by ordering the Township and County to assume the costs of the needed improvements. It argues that the PUC lacks jurisdiction to order these improvements because they are general highway improvements, for which the Department is solely responsible, and they do not constitute an alteration of a highway-rail crossing. We are unpersuaded by this argument. It is clear that the subject of these proceedings is a highway-rail crossing and that the PUC therefore has exclusive jurisdiction to order work to be performed incident to the crossing regardless of the designation of the ownership of the highway involved. *See Department of Transportation v. Pennsylvania Public Utility Commission,* 3 Pa. Commonwealth Ct. 473, 284 A.2d 155 (1971). We are also

unpersuaded by the County's contention that the PUC exceeded its authority to allocate cost under Section 411 because it has failed to order any "construction, relocation, alteration, protection, or abolition" of a crossing. We believe that the PUC's order requiring the installation of signs and flashing signals can be characterized as an alteration to or protection of a crossing subject to the PUC's control.

For the foregoing reasons, the order of the PUC will be affirmed.

ORDER

AND Now, this 30th day of May, 1979, the order of the Public Utility Commission in No. 21727 is hereby affirmed.