Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Pennsylvania Public Utility Commission, et al., Respondents.

Argued December 17, 1981, before President Judge CRUMLISH and Judges ROGERS and CRAIG, sitting as a panel of three.

*Benjamin B. Wechsler, II,* Assistant Counsel, with him *Herbert G. Zahn,* Assistant Counsel, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for petitioner.

*Richard S. Herskovitz,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondents.

OPINION BY JUDGE CRAIG, January 21, 1982:

The Pennsylvania Department of Transportation (PennDOT) petitions for review of an order by the Public Utility Commission directing it to pay $3000 to the Consolidated Rail Corporation (Conrail) as PennDOT's share of the expense of repairing a bridge in the Borough of North Irwin.

In October of 1975, the borough filed a complaint against Westmoreland County, West Penn Power Company, Peoples Natural Gas, PennDOT and Penn Central Transportation Company—to which Conrail is the successor—alleging that the 75-year old bridge,

which carries a borough street, Fourth Street, over the railroad tracks, was so deteriorated that a five-ton weight limit had been imposed. At hearings before the Commission, witnesses testified that the limit prevented school buses and fire equipment from crossing the bridge, which is one of two main arteries for access to the borough from Legislative Routes 639 (Traffic Route 993) and 64029. The alternative access route, which passes under a railroad crossing, had been blocked occasionally due to trucks losing their brakes on the steep hill leading to that underpass.

The Commission issued an interim order in January of 1978 directing Conrail to make bridge repairs. After hearing additional testimony following completion of the repairs, the Commission ordered PennDOT's $3000 contribution toward Conrail's total costs of $77,488.

PennDOT admits that the Commission has exclusive jurisdiction over rail-highway crossings under Section 409(c) of the Public Utility Law of 1937,[1] but argues that PennDOT is not a proper party to be assessed any costs under Section 411,[2] which provides:

[T]he expense of such construction, relocation, alteration, protection, or abolition of any cross-

---

[1] Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1179(c), which states:

Upon its own motion or upon complaint, *the commission shall have exclusive power after hearing*, upon notice to all parties in interest, including the owners of adjacent property, *to order any such crossing heretofore or hereafter constructed to be* relocated or *altered*, or to be abolished upon such reasonable terms and conditions as shall be prescribed by the commission. (Emphasis supplied.)

The Public Utility Law of 1937 was in effect when the complaint was filed, and although it was repealed by Section 2 of the Act of July 1, 1978, P.L. 598, a similar provision may now be found at 66 P.S. §2702(c).

[2] 66 P.S. §1181. A similar provision may now be found at 66 P.S. §2704(a).

ing shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine. . . .

PennDOT first contends that the Commission has no power to allocate costs against it where the highway located at the crossing is not a state highway. Despite PennDOT's efforts to distinguish the case, we believe that *Department of Transportation v. Public Utility Commission*, 3 Pa. Commonwealth Ct. 473, 284 A.2d 155 (1971) is indistinguishable and thus controlling. As stated by Judge (now Justice) WILKINSON, the issues there raised by PennDOT, concerning a 17th Street bridge, were:

[F]irst, whether the Commission may legally allocate any of the cost of a highway-rail improvement against PennDOT where the bridge and highway passing over it are not, and never have been, a part of the State Highway system; second, whether the Commission in the instant appeal abused its discretion in allocating $150,000 of the highway-rail crossing improvement cost to the Commonwealth.

This court concluded that:

There is no limitation in this section restricting the Commission's jurisdiction over the Commonwealth to those highway-rail crossings that involve only highways that are part of the State Highway system. This section gives the Commission jurisdiction over the Commonwealth to impose costs under Section 411 regardless of the designation of the highway involved, i.e., State highway, county road, or township road.

3 Pa. Commonwealth Ct. at 476, 284 A.2d at 157.

In the present case, the Commission found that, although the road was not part of the state highway

system, it is used extensively by borough residents to get to state highways, and that the only other access into the borough is over a state highway which is blocked occasionally. The Commission therefore determined that PennDOT "has some obligation to the residents of the borough . . . to assist in providing them access to points south of the borough, [and that it should] bear a portion of the costs incurred by Conrail in making repairs to the subject bridge."

That reasoning is buttressed by the statutory mandate that PennDOT perform certain administrative and advisory functions with respect to local roads, *see* Sections 2005 and 2006 of the Administrative Code of 1929,[3] and the Commission's own regulation requiring PennDOT to be made a party respondent to a crossing complaint filed under Section 409. 52 Pa. Code §3.361(a).

PennDOT also contends that its appropriations from the General Assembly are restricted to the construction, repair and maintenance of state designated highways only, and that the Commission's order must be subordinate to this fiscal restraint, citing Article VIII, Sections 11 and 12 of the Pennsylvania Constitution, Section 2002 of the Administrative Code,[4] the

---

[3] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§515, 516.

[4] Section 2002, 71 P.S. §512, reads:

Powers and duties of the department.

(a) The Department of Transportation in accord with appropriations made by the General Assembly, and grants of funds from Federal, State, regional, local or private agencies, shall have the power, and its duty shall be:

. . . .

(8) To mark, build, rebuild, relocate, fix the width of, construct, repair and maintain State designated highways and transportation facilities and rights of way;

(10) To have exclusive authority and jurisdiction over all State designated highways;

Liquid Fuels Tax Act,[5] the Fuel Use Tax Act,[6] as well as the terminology of current appropriation acts.

However, this court, in the 17th Street bridge case, also decided that issue, including specific consideration of the Administrative Code, 71 P.S. §511 *et seq.*, and the Constitution, stating:

> [I]t is clear that the funds administered by PennDOT are not restricted from use with respect to the highway-rail crossing involved, but rather may not be used for *private* highways or bridges which situation is not before us. . . .

3 Pa. Commonwealth Ct. at 477, 284 A.2d at 158. Although PennDOT counsel have energetically submitted new arguments, the issues here are the same as those decided in the 17th Street bridge case, and we do not have a sufficient basis on which to overrule the result we reached there.

Because the Commission's allocation of a cost share against PennDOT is supported by reading all of the statutory and constitutional provisions in pari materia, we are unable to perceive that the Commission's action usurps the power of the legislature.

Having determined that the Commission's allocation of costs against PennDOT is just and reasonable, supported by substantial record evidence and in accordance with the law, we affirm. *Manchester Township v. Public Utility Commission,* 43 Pa. Commonwealth Ct. 118, 401 A.2d 1237 (1971).

> (11) To superintend, supervise and control the work, of constructing, reconstructing, maintaining and repairing State designated highways and other transportation facilities. . . . .

In view of the multitude of statutes dealing with PennDOT, we cannot read this section as an exclusive listing of PennDOT's powers and duties.

[5] Act of May 21, 1931, P.L. 149, *as amended,* 72 P.S. §2611a.

[6] Act of January 14, 1952, P.L. (1951) 1965, *as amended,* 72 P.S. §2614.1.

230

ORDER

Now, January 21, 1982, the order of the Public Utility Commission, No. 21373, dated October 7, 1980, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.