Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Pennsylvania Public Utility Commission, Consolidated Rail Corporation, County of Cambria, Borough of South Fork and Borough of Ehrenfeld, Respondents.

Argued September 14, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and DOYLE.

*Stephen Dittman,* Assistant Counsel, with him *Herbert G. Zahn,* Assistant Counsel, *Ward T. Williams, Chief* Counsel, and *Jay C. Waldman,* General Counsel, for petitioner.

*John J. Gallagher,* Assistant Counsel, with him *John B. Wilson,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondents.

OPINION BY JUDGE ROGERS, November 22, 1982:

The Commonwealth of Pennsylvania, Department of Transportation (Department) seeks review of an Order of the Pennsylvania Public Utility Commission, entered March 11, 1981, allocating to the Department five per cent of the costs attributable to the repair of a bridge, constructed in the first decade of this century, located in the Borough of South Fork, Cambria County, and carrying the Borough's Grant Street over the Little Conemaugh River and a right-of-way of the Consolidated Rail Corporation.

Two issues are raised: whether the Commission is authorized to allocate to the Department costs attendant upon the repair of a highway-rail crossing where the highway intersecting the railroad right-of-way is not a "state designated" highway within the meaning of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. §670 *et seq.,* and, assuming an affirmative response to this first inquiry, whether the Commission abused its discretion in the particular scheme of allocation here ordered.

The facts are undisputed. In September, 1976 Cambria County petitioned the Commission to take appropriate action with respect to the bridge which, the county alleged, was in a structurally unsound and hazardous condition of repair. On October 13, 1976, the Commission ordered an investigation of the structural adequacy and safety of the bridge. Thereafter, the Commission caused a field inspection to be performed and, following the recommendation of the consulting engineer, ordered the bridge to be closed to all vehicular traffic. A number of hearings and field conferences were then conducted by an administrative law judge. The Department's motion that it be dismissed as a party was denied and it was determined that a railroad crossing at this location is necessary, that the bridge required extensive structural repairs and painting, and that the cost of this work should be borne by the parties in the following manner:

PennDOT will be assigned a token 5% of the costs.

Conrail will be assigned 40% of the costs.

Cambria County will be assigned the remaining 55% of the costs.

PennDOT is being assigned a token 5% of the costs due to its limited involvement in the project. The proximity of one of its major highways (40 feet from the structure), certainly contributes some volume of traffic to the structure which tends to increase the maintenance burden over what might normally be expected with a local road that does not intersect with a major state highway. However, since no traffic studies have actually been made and since the highway carried by the structure is not a State highway, we are only assigning 5% of the costs to PennDOT.

The Department's exceptions to this Supplemental Final Decision of the Administrative Law Judge were denied, the Commission adopted the Supplemental Final Decision, and the Department appealed.

Sections 2702(c) and 2704(a) of the Public Utility Code, 66 Pa. C. S. §§2702(c) and 2704(a), provide the following:

## Section 2702

(c) Mandatory relocation, alteration, suspension or abolition.—Upon its own motion or upon complaint, the [Public Utility] commission shall have the exclusive power . . . to order any such [railroad] crossing heretofore or hereafter constructed to be relocated or altered, or to be suspended or abolished upon such reasonable terms and conditions as shall be prescribed by the commission. . . . The commission may order the work of construction, relocation, alteration, protection, suspension or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth.

## Section 2704

Compensation for damages occasioned by construction, relocation or abolition of crossings.

(a) General rule.—[T]he cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine.

As the Department concedes, this Court has dealt at length with the first issue set forth above in *Department of Transportation v. Pennsylvania Public Utility Commission,* 3 Pa. Commonwealth Ct. 473, 284 A.2d 155 (1971) (hereinafter referred to as the *17th Street Bridge* case). In that case Judge (later Justice) WILKINSON, writing for a unanimous Court sitting en banc held:

> [W]e agree with the Commission and the appellees that the Commission has the jurisdiction and power to allocate costs to PennDOT. Section 409(c) [of the Public Utility Code—now found at 66 Pa. C. S. §2702(c)] gives the Commission exclusive power to order any highway-rail crossing relocated, altered, or abolished and, in addition, order such work to be performed in whole or in part by any public utility or municipal corporation or *by the Commonwealth.* There is no limitation in this section restricting the Commission's jurisdiction over the Commonwealth to those highway-rail crossings that involve only highways that are part of the State Highway system. This section gives the Commission jurisdiction of the Commonwealth to impose costs under Section 411 [of the Code, 66 Pa. C. S. §2704] regardless of the designation of the highway involved; i.e. State highway, county road, or township road.

The Department asks us to overrule our decision in the *17th Street Bridge* case first because the Department is now prepared to establish, as it failed to do on the occasion of the earlier appeal, that Commonwealth agencies other than the Department have jurisdiction over and are responsible for the maintenance of some of Pennsylvania's public roads. This consideration appears to be irrelevant in this case since the Department does not contend that any of these other

agencies have any responsibility with respect to the highway and bridge involved in this litigation. We do not have before us the question of whether it would ever be appropriate for the Commission to require some Commonwealth agency other than the Department to share in the costs attendant upon work required at a crossing (the Commission asserts in its brief that it has, in the matter of other crossings, required such contribution from Commonwealth agencies other than the Department) but only whether the Department is an agency from which contribution can be here demanded. As to this issue the Department merely repeats its contention, rejected in *17th Street Bridge,* that it may not be ordered to contribute to the repair of roads or bridges which are not a part of the state highway system. We see no reason to depart from our earlier holding that it may.

The Department also asserts, as it did in the *17th Street Bridge* case, that, apart from the power of the Commission to order it to contribute to the repair of roads not included in the state highway system, the Department is prevented from so expending its appropriated funds. We have reviewed the provisions referred to by the Department in Section 2002(a) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §512(a) as well as language contained in the Act of June 30, 1980, P.L. 1441, No. 22-A, establishing funds to the Department, and conclude that nothing contained therein requires a result different from that reached in *17th Street Bridge.*

The powers and duties of the Department specified in Section 2002(a) of the Administrative Code include those necessary

(6)  To coordinate the transportation activities of the department with those of other public agencies and authorities; [and]

. . . .

(12)  To enter into contracts for designing, constructing, repairing, or maintaining, State designated highways, *and other transportation facilities and rights of way, airports or any parts thereof, as may now or hereafter be provided by law;*

This mandate does not appear to prevent the Department from, and indeed clearly authorizes it to, comply with orders of the Public Utility Commission requiring the repair of transportation facilities.

The appropriation legislation referred to designates in excess of $385 million to be expended by the Department "for the administration and operation of the maintenance program for State roads, bridges, tunnels and structures. . . ." As we held in *17th Street Bridge,* all of Pennsylvania's highways and their related structures, except those privately owned, are the property of the State. Therefore, the language above quoted would not appear to forbid the expenditures here ordered by the Commission. In sum, the Department has brought to our attention no authority or argument which requires us to depart from our earlier decision of these issues.

Finally, the Department asserts that the Commission abused its discretion on the facts here by ordering the Department to reimburse the County for five per cent of its bridge repair costs. As we have indicated, the Commission determined that this amount, which it characterized as a token, was an accurate reflection of the additional highway and bridge use resulting from the proximity of several state designated highways, one of which is located some forty feet from the bridge. No evidence supports an inconsistent conclusion and, in our judgment, the Commission's actions were well within the scope of its powers as conferred by Section 2704 of the Public Utility Code.

Order affirmed.

### ORDER

AND Now, this 22nd day of November, 1982, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.