Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Pennsylvania Public Utility Commission et al., Respondents. Township of North Huntingdon, Intervenor.

Argued September 15, 1982, before Judges ROGERS, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Stephen Dittman*, Assistant Counsel, with him *Herbert G. Zahn*, Assistant Counsel, *Ward T. Williams*, Chief Counsel, and *Jay C. Waldman*, General Counsel, for petitioner.

*John J. Gallagher*, Assistant Counsel, with him *John B. Wilson*, Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.*, Chief Counsel, for respondents.

*Thomas P. Cole, II*, for intervenor.

OPINION BY JUDGE WILLIAMS, JR., August 24, 1983:
The Pennsylvania Department of Transportation (DOT) petitions this court to review an order issued by the Pennsylvania Public Utility Commission (Commission) directing DOT to pay ten percent of the actual costs of: (1) preparing completed construction plans for the improvement of the western approach to the Barner Hill Road Bridge (Bridge) located in North Huntingdon Township (Township), Westmoreland County (County), and (2) providing all material and performing all work necessary to improve the western approach to the bridge. The Township, a respondent in the proceedings below, has intervened in the instant appeal. The Township requests this court to consider the reasonableness of the order of the Commission directing it to pay certain percentages of the costs incurred by Conrail and the County in making several improvements to the bridge and its approaches.

In February, 1978, David H. Woomer, filed a formal complaint against the Township, County, West

Penn Power Company (West Penn), National Railroad Passenger Corporation (Amtrak), Consolidated Railroad Corporation (Conrail) and DOT. The complaint alleges that the bridge is in disrepair and is incapable of accommodating modern vehicular traffic. The complaint further avers that the bridge is the only means of ingress and egress for approximately thirteen families, including the complainant and his family; and that the western approach to the bridge cannot be safely negotiated by emergency vehicles. Thus, the complaint asserts, the welfare of the families is jeopardized by the condition of the bridge. The Barner Hill Road Bridge is an old wooden bridge built by Pennsylvania Railroad in 1903. It crosses three sets of rail tracks now owned and operated over by Conrail. The bridge carries Barner Hill Road over the three sets of rail tracks. Approximately two thousand feet to the west of the Bridge is a dead-end, and ninety-six feet to the east of the bridge Barner Hill Road intersects with state highways.

All of the respondents answered the complaint; and all but one, Conrail, moved to dismiss the action as to themselves. Conrail answered the complaint by denying that the bridge was unsafe for vehicles of the size and weight for which it was originally designed. As for the remaining respondents, the major issue focuses on the respective parties' responsibility to maintain the bridge.

The County's answer denied providing any service to the bridge; and further denied any responsibility for any alleged unsafe condition on the bridge. West Penn averred that the bridge is not serviced by it, and that it has no responsibility to provide a safe means of egress and ingress to the families living on the south side of the bridge. West Penn further pleaded that it is beyond the power and scope of its charter to provide a bridge for the convenience and service of the general

public. DOT's motion to dismiss asserted that the complaint failed to allege that the bridge crossing is on a state highway. DOT further maintained that it receives no funds with which to repair, reconstruct or maintain highways or crossings that have not been designated state highways by the legislature. Amtrak's answer alleged that it does not own any of the rail track existing below the bridge, and that it has no service interest in the bridge. Amtrak also stated that the line of rail is operated by Conrail under contract. Amtrak, therefore requested that the complaint, as against it, be dismissed. The Township's motion to dismiss contended that it has never maintained the bridge and that it has no funds at its disposal to use to repair, reconstruct, or maintain the bridge. The Township argued that it has no jurisdiction over the bridge and has no legal authority to involve itself with repairs, reconstruction or maintenance of the bridge.

A hearing before an Administrative Law Judge (ALJ) was held on May 18, 1978. After hearing the testimony of the complainant, the engineer for the Township, the Township Commissioner and the Senior Civil Engineer for Conrail, the ALJ concluded that DOT, West Penn and Amtrak were not proper parties to the action, and could be dismissed as parties to the action. As for the remaining parties the ALJ ordered them to cooperate in conducting a study into the feasibility of: (1) providing an at-grade crossing in place of the present above grade crossing, (2) connecting existing Township roads to provide alternate access to the Barner Hill area, (3) increasing the load-carrying capacity of the present bridge to 13 tons and improving the southen approach to the bridge so as to accomodate emergency service and other service vehicles, and (4) constructing a new bridge with highway approaches of current standards capable of carrying 20 ton loads. The ALJ further ordered that

the study and estimates of the proposed plan be distributed to all concerned parties, and that a hearing be scheduled for the purpose of adopting the proposed plans. The ALJ's Initial Decision was dated September 7, 1978.

Exceptions to the ALJ's Initial Decision were filed by Conrail and the Township, on October 4, and October 6, 1978, respectively. At a public session on November 21, 1978, on motion of Commissioner Helen O'Bannon, the record was reopened, the Commission staff was made a party to the proceedings, and the matter was remanded to the ALJ so that the testimony of the Commission's staff could be received into the record.

During a hearing held before the ALJ on May 1, 1979, the Commission's staff was given the opportunity to offer testimony estimating the cost of an engineering study. The engineering study was to outline all alternatives for rehabilitating the bridge, and improving its western approach while also estimating the costs of implementing the final plans for the chosen alternative. The Commission's staff recommended that the County and Township share the responsibility of improving the western approach to the bridge. DOT was present at the hearing and renewed its motion to be dismissed from the proceedings.

Before the ALJ issued his Supplemental Initial Decision, on May 11, 1979 the Township submitted a petition requesting the Commission to take additional testimony concerning the ownership of the bridge. The Township also wanted an additional opportunity to show that DOT should not be dismissed as a party to the proceedings. It contended that the roads on both sides of the bridge are owned by the Commonwealth of Pennsylvania and that the responsibility of improving the approaches to the bridge should be borne by the Commonwealth. DOT answered the Township's

petition by denying the contention that the Commonwealth owned the roadway on both sides of the bridge. DOT offered a brief history of the ownership of Barner Hill Road to show that through legislation the Commonwealth had relinquished ownership of the roadway to the township in May, 1945.

After considering the additional evidence adduced at the May 1, 1979 hearing, the ALJ issued a Supplemental Initial Decision on May 16, 1979 wherein he ordered West Penn and DOT dismissed as parties to the proceedings. The ALJ further ordered the Township and County to prepare and submit detailed plans and cost estimates for improving the approach to the Barner Hill bridge. Additionally, Conrail was ordered to perform an engineering review of the structure of the bridge and to furnish the Commission and all parties with copies of its findings. A further hearing on the matter was ordered so that the parties could discuss the adoption of the plans submitted by the parties.

The Commission, by an order of July 12, 1979 entered on July 24, 1979, adopted the ALJ's Supplemental Initial Decision. Accordingly, a further hearing was held on January 24, 1980 to consider the reports prepared by the parties.

After the hearing of January 24, 1980 the ALJ drafted a Supplemental Initial Decision dated October 14, 1980 which was subsequently adopted by the Commission at its public meeting held on February 13, 1981. This Supplemental Initial Decision concluded that Conrail, DOT, the Township and County were proper parties to the proceedings. Contrary to an earlier decision dismissing DOT as a party, only West Penn and Amtrak were dismissed as parties. The ALJ further concluded that pursuant to the Public Utility Code, DOT, Conrail, the Township and County were proper parties to share the costs of any improvement to the bridge and its approaches.

Pursuant to the Commission's adopted order of February 13, 1981 as entered on February 25, 1981, Conrail was to complete construction plans for the rehabilitation of the bridge and to provide all material and perform all work necessary to rehabilitate and strengthen the bridge. The County was ordered to complete construction plans for the improvement of the western approach to the bridge in accordance with the preliminary plans submitted by the County. The Commission further ordered the County to provide all material and perform all work necessary to improve the western approach to the bridge. Upon completion of the improvements, Conrail and the County were ordered to submit detailed statements of the actual costs incurred in furnishing material and performing work in accordance with the Commission's order.

Pursuant to the Commission's order entered on February 25, 1981, payment of the actual costs incurred by the County in its completion of the improvements to the roadway's western approach were apportioned among the parties in the following manner: DOT was to pay the County ten percent of the costs incurred by the County; the Township was to pay the County forty-five percent of the costs incurred by the County; the County was to bear the remainder of the costs incurred by itself. As for the preliminary plans that were to be submitted by the County and Township in accordance with the Commission's order adopted on July 12, 1979 the Township was ordered to pay the County fifty percent of the actual costs incurred by the County in making improvements to the south approach to the bridge.[1]

---

[1] The Commission's adopted order of July 12, 1979 directed the Township and County to submit preliminary plans for the construction of a forty foot turning radius on the roadway of the south approach to the bridge. The construction of this radius was to improve the south approach to the bridge and the County was to perform the work.

Payment of the actual costs incurred by Conrail in its efforts to rehabilitate the bridge were apportioned among the parties pursuant to the following scheme: The Township and County were to each pay Conrail fifty percent of the actual costs incurred by Conrail in furnishing material and performing work in accordance with the Commission's order entered on February 25, 1981. Pursuant to that order Conrail was to furnish all material and perform all work to relocate its aerial signal and communication lines so as not to interfere with the improvements to the western highway approach to the bridge. Also, Conrail was to bear the total costs incurred by it in performing the engineering review of the bridge and preparation of a report ordered pursuant to the Commission's order adopted July 12, 1979 and entered July 24, 1979.

As an intervenor in DOT's appeal to this court the Township challenges the cost apportioning scheme ordered by the Commission. The Township contends that the percentage of the costs incurred which it was ordered to pay the County and Conrail is far in excess of the amount any municipality may expect to pay for an improvement to a bridge crossing over a railroad. The Township also asserts that it should not have to bear any responsibility for the payment of costs for relocation of railroad aerial signal equipment and communication lines.

The PUC's authority to apportion costs is provided in Section 2704(a) of the Code, 66 Pa. C. S. §2704(a). The PUC, in apportioning these costs, is not limited to any fixed rule but must only consider all relevant factors and render an order which is just and reasonable. *Department of Transportation v. Public Utility Commission*, 21 Pa. Commonwealth Ct. 407, 346 A.2d 371 (1975).

The Township was directed to pay the County forty-five percent of the actual costs incurred in im-

proving the western approach to the bridge and fifty percent of the actual costs incurred in improving the southern approach to the bridge. We conclude that the record adequately supports the Commission's finding that the persons most directly affected by the conditions of the approaches are the residents of both the Township and County. Thus, it is just and reasonable for the Township and County to share the responsibility for improving the approaches to the bridge crossing.

However, inasmuch as the Commission found that the bridge was built by the Pennsylvania Railroad, Conrail's predecessor in interest, in 1903, and last inspected by Conrail as late as October, 1977, we cannot conclude that it is reasonable for the County and Township to bear the total costs for the relocation of Conrail's aerial signal equipment and communication lines. The aerial signal equipment and communication lines must be moved in order to improve the western approach to the Barner Hill Bridge. We have held that the installation of signs and flashing signals can be characterized as alterations to or protection of a crossing subject to the Commission's control. *Manchester Township v. Pennsylvania Public Utility Commission*, 43 Pa. Commonwealth Ct. 118, 401 A.2d 1237 (1979). Thus, the Commission can apportion the costs of relocating aerial signs and communication lines among the concerned parties. However, we do not think it is reasonable to place the burden on the Township and County to each pay fifty percent of the costs incurred by Conrail in relocating its aerial signal and communication lines. It was at the initiation of Conrail's predecessor in interest that the bridge was built in 1903. The record in this case does not establish a reasonable basis for apportioning the total costs of relocating Conrail's aerial sign and communication lines to the Township and County.

Where we have held that the Commission had the authority to order a township and county to assume the costs of installation of signs and flashing warning lights at a highway-rail crossing the record supported the Commission's finding that the need for improvement was attributed to poor planning on the part of the township and county. *Manchester Township.* There is no evidence in the present case that the need for improvement to the western approach to the bridge is attributable to poor planning by the Township and/or the County. Therefore, we do not think the Commission was justified in apportioning the total costs of relocating the aerial signs and communication lines to the Township and County. Accordingly, we remand this matter to the Commission for reconsideration of that portion of its order directing the Township and County to each pay fifty percent of the costs incurred by Conrail in relocating its aerial signs and communication lines.

In its appeal DOT raises two issues not novel to this Court: (1) whether the Commission is authorized to apportion to DOT the costs attendant upon the repair of a highway rail crossing where the highway intersecting the railroad is not a "state designated" highway within the meaning of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-101 *et seq.*, and (2) whether the Commission abused its discretion by devising a cost apportioning scheme directing DOT to pay an amount of costs incurred to improve the western approach to the bridge.

DOT argues that the approach to the Barner Hill Road bridge crossing carries a township road which is not part of the State Highway System. According to DOT, the monies it receives from the General Assembly's appropriation is restricted to use on state highways. Therefore, DOT contends that the Commission usurped the appropriation power of the General

Assembly and acted contrary to the constitution of Pennsylvania when it ordered DOT to spend its restricted funds on local roads and bridges.

This Court has recently held that regardless of whether the highway involved is a state highway, county road or township road, the Commission is empowered, pursuant to Chapter 27 of the Public Utility Code, 66 Pa. C. S. §§2701-2706, to allocate costs to DOT. *Department of Transportation v. Pennsylvania Public Utility Commission*, 70 Pa. Commonwealth Ct. 128, 452 A.2d 619 (1982). Within that same decision this Court had the opportunity to review Section 202(a) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §512(a). We concluded that there is nothing within that mandate which prevents DOT from complying with orders of the Commission requiring the repair of transportation facilities. *Id.* And just as it did previously[2] DOT cites Article VIII, Sections 11 and 12 of the Pennsylvania Constitution, The Liquid Fuels Tax Act,[3] and the Fuel Use Tax Act,[4] as authority to support its contention that its appropriations from the General Assembly are restricted to the construction, repair, and maintenance of state designated highways. However, we have concluded that neither the provisions of Article VIII, Sections 11 and 12 of the Constitution of Pennsylvania nor of the Administrative Code of 1929 restrict the use of funds administered by DOT for the repair of railroad-highway bridges involving non-state highways, but only prohibit the use of those funds for

---

[2] DOT raised similar arguments in *Department of Transportation v. Pennsylvania Public Utility Commission*, 64 Pa. Commonwealth Ct. 224, 439 A.2d 1301 (1982).

[3] Act of May 21, 1931, P.L. 149, *as amended*, 72 P.S. §2611(a).

[4] Act of January 14, 1952, P.L. (1951) 1965, *as amended*, 72 P.S. §2614.1.

work on private highways or private bridges. *Department of Transportation v. Pennsylvania Public Utility Commission*, 64 Pa. Commonwealth Ct. 224, 439 A.2d 1301 (1982).

In regard to DOT's challenge to the Commission's order directing it to pay ten percent of the actual costs incurred by the County in the County's efforts to comply with the Commission's order, we need only to remind DOT that the Commission is not limited to any fixed rule in apportioning costs, but that all relevant factors must be taken into consideration. *Department of Transportation v. Pennsylvania Public Utility Commission*, 21 Pa. Commonwealth Ct. 407, 346 A.2d 371 (1975). We conclude that the Commission's determination to apportion certain costs against DOT is supported by the record. Furthermore, since the Commission is empowered, pursuant to 66 Pa. C. S. §2704(a), to apportion costs to concerned public utilities, municipalities, and/or the Commonwealth, its order is in accordance with the law. Therefore, we affirm the Commission's order as it relates to DOT.

ORDER

AND Now, the 24th day of August, 1983, the order of the Pennsylvania Public Utility Commission adopted February 13, 1981 and entered on February 25, 1981 at Docket No. C-77100049 is affirmed as to the Department of Transportation. The said order, insofar as it relates to North Huntingdon Township, is reversed and remanded for further proceedings consistent with the annexed opinion. Jurisdiction relinquished.