557 A.2d 832

Consolidated Rail Corporation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued December 16, 1988, before Judges PAL-
LADINO and SMITH, and Senior Judge KALISH, sitting as
a panel of three.

*Margaret S. Woodruff*, with her, *Gayle Chatilo Sproul* and *Ralph G. Wellington, Schnader, Harrison, Segal & Lewis*, for petitioner.

*Linda C. Smith*, Assistant Counsel, with her, *John B. Wilson*, Deputy Chief Counsel, and *Daniel P. Delaney*, Chief Counsel, for respondent.

*Stephen F.J. Martin*, Assistant Counsel, with him, *Robert H. Raymond, Jr.*, Assistant Chief Counsel, and *John L. Heaton*, Chief Counsel, for Department of Transportation, intervenor.

OPINION BY JUDGE PALLADINO, April 24, 1989:

Consolidated Rail Corporation (Conrail) appeals from a decision of the Public Utility Commission (PUC) which ordered Conrail to: (1) pay the City of Altoona $15,000.00 as contribution to the expenses of repairing the 37th Street Bridge in Altoona; (2) bear costs of $7,673.08 it had incurred in furnishing construction engineering and inspectors for the project; and (3) bear the costs of right-of-way damages, estimated at $7,785.00, which it had incurred in the construction of the project. The sole issue before us is whether federal law preempts the PUC's authority to allocate costs to Conrail in the present case.

In October of 1981, the City of Altoona filed a complaint with the PUC alleging that the 37th Street Bridge, which carries 37th Street over Conrail tracks, was unsafe and in need of major repairs. The City requested that the PUC determine ownership of the 37th Street Bridge and then determine the party or parties responsible for reconstruction and repairs of the bridge. Hearings were held before an Administrative Law Judge (ALJ), following which the PUC entered an order, in November of 1982,

directing the City to prepare preliminary construction plans and cost estimates for replacement of the bridge. The City submitted the plans, and, thereafter, on July 6, 1984, the PUC issued an order directing the City to proceed with the bridge reconstruction project.

After the reconstruction had been completed, a hearing was held before an ALJ to allocate the costs of the project pursuant to the PUC's authority under section 2704(a) of the Public Utility Code (Code), 66 Pa. C. S. §2704(a).[1] The ALJ found that Conrail incurred costs of $7,673.08 in providing engineering and inspection services for the project, and that the City incurred costs of $7,785.00 in acquiring Conrail's right-of-way. The City had incurred total costs of $1,341,392.58 in construction of the project. Of that total amount, the City was reimbursed $992,275.86[2] from federal funds and $186,053.57 from Commonwealth funds. The federal funds covered 80% of the total cost, and the Commonwealth funds covered another 15% of the total cost.

---

[1] Section 2704(a) provides as follows:

**§2704. Compensation for damages occasioned by construction, relocation or abolition of crossings.**

(a) General rule.—The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

[2] Although the ALJ listed this amount as $991,275.86, both the PUC and Conrail, in their briefs, list the figure as $992,275.86.

The ALJ issued a recommended decision allocating costs of the project that had not been reimbursed. The PUC adopted the recommended decision and, on April 27, 1988, issued an order which provides, in pertinent part:

IT IS ORDERED:

1. That Consolidated Rail Corporation pay a sum or sums of money equal to $15,000 to the City of Altoona as its share of the costs for the project.

2. That Consolidated Rail Corporation bear the costs incurred by it in the amount of $7,673.08 in furnishing construction engineering, inspectors, etc. for the project, and bear the costs of the right-of-way damages incurred by it estimated at $7,785, in the construction of the project.

. . . .

Conrail has appealed to this court.

Conrail asserts that federal legislation and regulations prohibit the PUC from imposing costs upon it and that, therefore, the doctrine of federal preemption bars the PUC's allocation of costs to Conrail in the present case. " 'If Congress evidences an intent to occupy a given field, any state law falling within that particular field is preempted.' " *Burns International Security Services, Inc. v. Pennsylvania Human Relations Commission*, 119 Pa. Commonwealth Ct. 418, 424, 547 A.2d 818, 821 (1988) (quoting *Silkwood v. Kerr-McGee Corporation*, 464 U.S. 238, 248 (1984)). "The intent to occupy a given field may be explicitly stated in the federal statute's language or may be implied from the statute's structure and purpose." *Burns International*, 119 Pa. Commonwealth Ct. at 424, 547 A.2d at 821. State law is nullified if it conflicts with federal law. *Id*.

Section 2704(a) of the Code, 66 Pa. C. S. §2704(a), provides that the PUC is to determine compensation for

damages resulting from the construction, relocation, alteration, protection or abolition of a railroad crossing. We have held that in allocating costs in these cases, the PUC is not subject to any fixed rule, but, instead, must consider all relevant factors and issue an order which is just and reasonable. *Pennsylvania Department of Transportation v. Pennsylvania Public Utility Commission,* 76 Pa. Commonwealth Ct. 525, 464 A.2d 645 (1983).

We must decide whether the PUC has authority to apply section 2704(a) to Conrail in light of federal statutes and regulations. 23 U.S.C. §130(b) provides:

**§130. Railway-highway crossings.**

. . . .

(b) The Secretary [of the United States Department of Transportation] may classify the various types of projects involved in the elimination of hazards of railway-highway crossings, and may set for each such classification a percentage of the costs of construction which shall be deemed to represent the net benefit to the railroad or railroads for the purpose of determining the railroad's share of the cost of construction. The percentage so determined shall in no case exceed 10 per centum. The Secretary shall determine the appropriate classification of each project.

Pursuant to 49 C.F.R. §1.48(21), the Federal Highway Administrator has been given authority to administer 23 U.S.C. §130. Pursuant to that authority, the Federal Highway Administrator has promulgated regulations, one of which provides, in pertinent part:

**§646.210 Classification of projects and railroad share of the cost.**

(a) State laws requiring railroads to share in the cost of work for the elimination of hazards at

railroad-highway crossings shall not apply to Federal-aid projects.

(b) Pursuant to 23 U.S.C. 130(b), and 49 CFR 1.48:

(1) Projects for grade crossing improvements are deemed to be of no ascertainable net benefit to the railroads and there shall be no required railroad share of the costs.

(2) Projects for the reconstruction of existing grade separations are deemed to generally be of no ascertainable net benefit to the railroad and there shall be no required railroad share of the costs, unless the railroad has a specific contractual obligation with the State or its political subdivision to share in the costs.

. . . .

23 C.F.R. §646.210. As noted earlier, Conrail asserts that the above-stated statute and regulations preempt the PUC's authority to allocate costs to railroads for federal-aid projects.

Before addressing the issue raised by Conrail, we must address the contention of the PUC and the Pennsylvania Department of Transportation (DOT), as intervenor, that Conrail has waived its federal preemption argument by failing to adequately raise it in its exceptions to the ALJ's recommended decision.[3] Conrail filed seven exceptions to the ALJ's decision, specifically referencing those portions of the recommended decision which stated that Conrail was to bear a share of costs. In its "Basis for Exceptions," Conrail specifically referenced the federal regulation it asserts preempts PUC authority in this area. The PUC and DOT emphasize that Conrail stated in its

---

[3] Pa. R.A.P. 1551(a) provides that a reviewing court will not consider any question which was not raised before the government unit.

"Basis for Exceptions" that it would be possible for DOT to petition the federal government for approval of a PUC order allocating costs to a railroad for a federal-aid project.[4] The PUC and DOT assert that Conrail waived the preemption argument because Conrail suggested that the PUC order be modified so that it would become effective only upon a grant of approval by the federal government.

Our review of the exceptions persuades us that Conrail adequately raised the preemption issue in its exceptions. Conrail frankly concedes that it did not use the word "preemption" in its exceptions. However, Conrail did state as follows:

> The cost incurred by Conrail in furnishing construction engineering, inspectors, etc., the value of its right-of-way taken for the project and the $15,000 which [the ALJ] recommends Conrail be obligated to contribute to the City are all portions of the total project cost and as such, the payment and/or the assumption of such costs by Conrail would violate the Rules and Regulations of the Federal Highway Administration.

Conrail's Exceptions to Recommended Decision at 5. Furthermore, Conrail's exceptions focus exclusively on the ALJ's recommendation that Conrail be obligated to pay a share of costs. Thus, Conrail has not waived the issue of whether the PUC had authority to allocate costs to Conrail in the present case. Accordingly, we shall address that issue.

The PUC concedes that it may not allocate costs to a railroad if federal aid is used on a project such as the 37th Street Bridge Project. However, the PUC argues that, pursuant to section 2704(a) of the Code, 66 Pa. C. S.

---

[4] We note that all parties seem to agree that petition can be made to the Federal Highway Administration for waiver of a railroad's exemption from allocation of costs.

§2704(a), it *must* allocate costs in a just and reasonable manner and, therefore, it must allocate a portion of costs to Conrail. The PUC also asserts that DOT, as the administrator of federal funding, is the State agency primarily responsible for ensuring compliance with the federal law. The PUC states that DOT determines whether federal funds will be used in a given project, and that DOT has the authority to change the funding of a project. Also, in some instances, DOT might not make final funding decisions prior to PUC hearings and orders on allocation of costs. Thus, the PUC argues that important public safety improvements could be delayed while the PUC is forced to await DOT's funding decision. We, of course, are deciding only the case before us, and it is undisputed that in the present case the project involved is a federally aided one.

DOT also concedes that, in the present case, Conrail cannot be compelled to bear a share of the costs. However, DOT asserts that it is entitled to withhold a "final" decision on whether a project will be federally funded until *after* a PUC order allocating costs has been issued. DOT also asserts that it has the authority to "deobligate" federal funds from a given project, and thereby render the project a non-federal-aid one. Thus, if a railroad were allocated a substantial share of the costs of a given project, DOT would be inclined to switch the funding of the project so that the railroad could be compelled to pay.

We limit our decision to the case before us[5] and hold that the PUC was without authority to allocate costs to Conrail. The regulation at 23 C.F.R. §646.210 expressly states that a state law requiring railroads to share the costs of elimination of hazards at railroad crossings *shall not* apply to federal aid projects. The regulation explicitly

---

[5] Thus, we will not address issues raised by the scenario of DOT changing the federal aid status of a project; that case is not before us.

expresses the federal government's intent to preempt a state law allowing allocation of costs to a railroad in a federal aid project such as the present one. The PUC order in issue attempts to apply state law to the federal project at issue, and, therefore, the PUC order must be reversed and the case remanded.

Accordingly, the order appealed from is reversed insofar as it allocates costs to Conrail and the case is remanded for proceedings consistent with this opinion.

ORDER

AND NOW, April 24, 1989, the order of the Public Utility Commission in the above-captioned matter is reversed insofar as it allocates costs to Consolidated Rail Corporation and the case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

DOT, as the administrator of federal funds, is the agency which is primarily responsible for ensuring compliance with the federal law. The determination of which projects receive federal funds is not made by the PUC, rather it is a decision made by DOT, subject to approval by the federal government. This determination is not always made *prior* to the PUC's cost allocation hearing.

The eligibility of a project for federal funds and the classification of that project as a "federal aid project" are two different things. The distinction of these two concepts, and the purview of DOT to determine which project receives federal funds, prevents 23 C.F.R. §646.210 from preempting the PUC's authority under 66 Pa. C. S. §2704.

I conclude that the PUC *did* have the authority to allocate costs to Conrail. Therefore, I would affirm the trial court's order.