Lititz Mutual Insurance Company, Petitioner *v.* Commonwealth of Pennsylvania, William J. Sheppard, Insurance Commissioner, Insurance Department, Respondent.

Argued December 8, 1978, before Judges CRUMLISH, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Donald W. Bebenek,* with him *John E. Kunz,* and *Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioner.

*Kathleen Walsh Cramer,* Assistant Attorney General, with her *John H. Isom,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., May 22, 1979:

Lititz Mutual Insurance Company appeals a decision of the Insurance Commissioner who in response to a complaint filed by one of its insureds, Donna Dorman, determined that its attempted nonrenewal of her homeowner's policy violated the standards of the Unfair Insurance Practices Act.[1]

---

[1] Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§1171.1 et seq.

We affirm.

At issue is whether Dorman's acquisition of a large dog constitutes a substantial increase in the insured hazard so as to justify Lititz's refusal to renew her policy.

The essential facts are undisputed. Dorman had sustained two burlary losses since she first obtained homeowner's coverage from Lititz in May, 1976. After the second burglary, a claims adjuster visited Dorman's home to investigate the loss and discovered she had obtained a dog which is at least part German Shepherd. Thereafter, Lititz mailed her a "Notice of Cancellation or Refusal to Renew" which stated that her coverage would terminate on May 3, 1977, and which gave the following explanation:

> Increase in hazard: Due to loss frequency Insured has purchased German Shepherd guard dog which creates potentially dangerous liability exposure.

Lititz took this action pursuant to a directive it had sent to all its agents and which had been in effect since April, 1971:

> NO NEW or RENEWAL Homeowners policies will be acceptable for an insured who owns a potentially fierce or unmanageable dog. This restriction applies to any dog of a size and/or disposition whose breed or mixture represents the possibility of attack upon human being. Past cases have involved German Shepherds and Doberman pinshers [sic] as well as mixed breeds of comparable nature.

On April 6, 1977, Dorman appealed to the Insurance Commissioner, who, after a preliminary investigation, notified Lititz that he believed it was in violation of the Act and, at Lititz's request, the Commissioner held a hearing on the matter on May 27, 1977. Thereafter, he determined that Lititz's cancellation

of the policy had been improper under Section 5(a)(9) of the Act, 40 P.S. §1171.5(a)(9),[2] and ordered Lititz to reinstate Dorman's policy retroactive to the date of cancellation.

Section 5(a)(9)'s definition of unfair insurance practices effectively limits an insurance company's ability to cancel or to refuse to renew insurance policies covering owner-occupied private residential properties to ascertain prescribed circumstances which include situations where "there has been a *substantial change or increase in hazards insured against* by reason of willful or negligent acts or omissions by the insured." (Emphasis added.)

We are without the benefit of prior decisional law interpreting this statute's use of the phrase "substantial increase or change in hazard." However, interpretation of the same or similar phraseology in the context of other insurance statutes[3] has led to the

---

[2] Section 5(a)(9), 40 P.S. §1171.5(a)(9), provides as follows: Cancelling any policy of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more or refusing to renew any such policy unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or hazard assumed by the company; or there has been a substantial change or increase in hazards insured against by reason of willful or negligent acts or omissions by the insured; or the insured has failed to pay any premium when due whether such premium is payable directly to the company or its agents or indirectly under any premium finance plan or extension of credit; or for any other reasons approved by the commissioners pursuant to rules and regulations promulgated by thte [sic] commissioner.

[3] *Cf.* standard fire insurance policy provisions exempting insurance company from liability for loss occurring while hazard is increased by any means within the control or knowledge of the insured. Section 506 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §636.

conclusion that a "mere trifling increase" in risk will not justify the insurer's removal from liability; "rather there must be a substantial and material increase, such as the insurer, in view of the terms of the policy, could not reasonably be presumed to have contracted to assume." 8 *Couch on Insurance* 304 (2d ed. 1961).

Lititz adduced evidence of the dangerous propensities of German Shepherds who, as a breed, account for a disproportionate amount of dog bite injuries. Lititz did not introduce any evidence of dangerous propensities in the insured's dog in particular. The Commissioner found, as fact, that Dorman's acquisition of the dog had increased Lititz's risk to "some degree" but would not characterize that degree as "substantial" so as to bring this refusal to renew within the purview of Section 5(a)(9)'s exceptions.

Our scope of review of the Insurance Commissioner's decision is limited to a determination of whether the Commissioner abused his discretion or committed an error of law.[4] The record does not reveal either of these defects in the Commissioner's decision.

We are unwilling to conclude that the Commissioner erred as a matter of law absent evidence that German Shepherd dogs in general or this dog in particular so magnified Lititz's risk of potential liability that Dorman would be receiving more than her share of the bargain were Lititz forced to renew her policy. *See, The Increase-of-Hazard Clause in the Standard Fire Insurance Policy*, 76 Harvard L. Rev. 1472 (1963).

To hold that the mere acquisition of a large dog is such a substantial increase of hazard that an insurance company may cancel or refuse to renew a homeowner's policy would jeopardize the coverage of every homeowner who, for purposes of security or pleasure, acquires a canine companion.

---

[4] Section 12 of the Act, 40 P.S. §1171.12.

Accordingly, we

ORDER

AND NOW, this 22nd day of May, 1979, the decision of the Insurance Commissioner in the above captioned matter dated July 19, 1977, is hereby affirmed.