613 A.2d 622

**D & H CORPORATION, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 15, 1992.

Decided Aug. 4, 1992.

---

508

Joseph A. O'Brien, for petitioner.

David A. Salapa, Asst. Counsel, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

In this case of first impression, this Court must determine whether the Pennsylvania Public Utility Commission (PUC) has the authority to order D & H Corporation (D & H) to pay 50% of future maintenance costs of a highway bridge which

crosses over certain of D & H's rail lines in Luzerne County (crossing).

On May 9, 1984, the Department of Transportation (DOT) filed a petition with the PUC, seeking approval for the reconstruction of a crossing, carrying Pennsylvania Legislative Route 5 over railroad tracks owned by D & H and Consolidated Rail Corporation (Conrail). After a field meeting, DOT agreed to do all work at its initial cost and expense.

The PUC, having received no objection to DOT's plan for reconstruction, entered an order, approving DOT's application and submitted plans. The order also directed Conrail and D & H to provide watchmen, flagmen, inspectors and engineering services for protection of their respective operations and facilities during the reconstruction. The order also stated that a hearing would be held in the future to allocate the cost of the project and assign future maintenance responsibility for the rebuilt structure once DOT completed the rehabilitation work. (4a–7a.)

After DOT completed the project, the PUC's administrative law judge (ALJ) held the hearing to allocate cost, pursuant to the PUC's authority under Section 2704(a) of the Public Utility Code, 66 Pa.C.S. § 2704(a).[1] The hearing consisted of testimony of witnesses for DOT, Conrail and D & H, concerning various factors which the ALJ would consider in determining the costs and future maintenance. DOT also introduced testimony concerning a contract it entered into with Conrail, wherein Conrail would make a financial contribution to DOT in the amount of $25,800.[2] In exchange, DOT would "bear all costs incurred by [Conrail] for completion of the project as

1.  Section 2704(a) of the Public Utility Code provides that the PUC is to determine compensation for damages resulting from the construction, relocation, alteration, protection or abolition of a railroad crossing.

2.  Conrail and DOT have entered into a statewide contract, wherein Conrail participates financially in any "bridge build projects" which cross its tracks, paying approximately 10% of structure costs in advance. In return, Conrail is relieved of all future maintenance responsibility. Conrail's $25,800 contribution here is part of this statewide contract. (27a–28a.)

detailed in Exhibit 1." (23a.) [3] However, DOT's witness also testified that Conrail's contribution would also effectively transfer any liability Conrail would have for *future maintenance* to DOT. DOT's expert also testified that D & H should be held liable to pay for 50% of the maintenance costs for the crossing in keeping with the previous Public Service Commission's (PUC's predecessor) order of 1927.[4]

On August 9, 1991, the ALJ issued a recommended decision which ordered, *inter alia,* that Conrail pay $25,800 to DOT, as previously contracted; directed DOT bear the cost of maintaining the structure; and, directed D & H reimburse DOT 50% of maintaining the structure, exclusive of the roadway paving on the bridge.

■ D & H filed exceptions to the ALJ's recommended order, opposing that portion of the order which directed it to reimburse DOT for 50% of maintenance costs. However, the PUC adopted the ALJ's recommended order.

On appeal,[5] D & H argues that 49 C.F.R. § 646.210 precludes the PUC from allocating future maintenance costs to D & H because the crossing is a "federal aid project." D & H also argues that the PUC's allocation of future maintenance costs to D & H is not fair or reasonable.

## I. PREEMPTION

D & H argues that the PUC committed an error of law in assigning any future maintenance responsibilities to D & H

3. Exhibit 1 sets forth a detailed statement of costs *incurred* by DOT for the reconstruction of the project. (77a.)

4. In 1927, the PUC allowed the construction of the original crossing over the tracks of the Lehigh Valley Railroad Company (Conrail's predecessor in title) and the Delaware and Hudson Company (D & H's predecessor in title) and assigned costs of the construction project equally between the two railroads. Lehigh Valley Railroad was assigned the responsibility for maintaining the structure. Delaware and Hudson was directed to reimburse Lehigh Valley Railroad for 50% of maintenance costs.

5. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

because the crossing is a "federal aid project." 23 C.F.R. § 646.210(a) provides:

> (a) State laws requiring railroads to share in the costs of work for the elimination of hazards at railroad—highway crossings *shall not apply to federal aid projects.*

(Emphasis added.)

In the ALJ's recommended decision, he found that federal funds were used for some initial construction costs of the project (Finding of Fact 5). Because the federal aid status of a project is not final until DOT vouchers the federal government and because the ALJ found that at the time of the hearing, DOT had not issued a final voucher to the federal government, the referee did not find the crossing to be a federal aid project. (Finding of Fact 15). The PUC adopted these findings, along with the remainder of the ALJ's recommended decision.

D & H argues that this case is controlled by *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission,* 125 Pa.Commonwealth Ct. 334, 557 A.2d 832 (1989), and therefore, the PUC's ruling was preempted by federal law. However, without a finding that the crossing is a federal aid project, *Consolidated Rail* does not control.

*Consolidated Rail* held that 23 C.F.R. § 646.210 [6] preempted the PUC's authority to allocate *construction costs* at rail-highway crossings. We reasoned that the regulation expresses the federal government's intent to preempt state laws in

---

6. 23 C.F.R. § 646.210 is promulgated pursuant to 23 U.S.C. § 130(b) which provides:

§ 130. **Railway-highway crossings.**

\* \* \* \* \* \*

(b) The Secretary [of the United States Department of Transportation] may classify the various types of projects involved in the elimination of hazards of railway-highway crossings, and may set for each such classification a percentage of the costs of construction which shall be deemed to represent the net benefit to the railroad or railroads for the purpose of determining the railroad's share of the cost of construction. The percentage so determined shall in no case exceed 10 percentum. The Secretary shall determine the appropriate classification of each project.

Under 49 C.F.R. § 1.48(21), the Federal Highway Administrator has been given authority to administer 23 U.S.C. § 130.

this specific type of federal aid project and, therefore, we reversed the PUC's allocation of *construction costs* to Conrail.

■ In *Consolidated Rail*, there was no dispute that the project in question involved a federal aid project because DOT had issued the final voucher to the federal government, thus, allowing us to consider the preemptive effect of 23 C.F.R. § 646.210. Because the ALJ did not find a federal aid project here and because no substantial evidence supports such a finding, we cannot consider the preemptive effect of 23 C.F.R. § 646.210.[7]

■ Even if the ALJ and the PUC had found that the crossing to be a federal aid project, the PUC would not have been preempted by 23 C.F.R. § 646.210 because this provision does not specifically preempt *maintenance* responsibility in federal aid rail-highway crossing projects.

■ While D & L urges us to expand the *construction* preemption of *Consolidated Rail* to future maintenance, we are unable to do so. Congressional intent to preempt can be either expressly stated in a statute or implied from its construction or purpose. *F.M.C. Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Absent an express statement, preemptive intent may be implied. However, such intent cannot be lightly inferred. *United States v. City of Philadelphia*, 798 F.2d 81 (3rd Cir.1986). Preemption may be inferred when the language of the statute or regulation evidences congressional intent to occupy the field, *Kolbeck v. General Motors Corp.*, 702 F.Supp. 532 (E.D.Pa.1988), or where a state law conflicts with federal law and compliance with both would be impossible. *Mazur v. Merck & Co.*, 742 F.Supp. 239 (E.D.Pa.1990).

Nothing in 23 C.F.R. § 646.210 provides for federal funding of maintenance costs at railway crossings. In fact, 23 U.S.C.

7. In footnote five of *Consolidated Rail*, we also declined to address the scenario where DOT changes the federal aid status of a project. Here, because DOT may have never issued a final voucher to the federal government, this project may never have become a "federal aid project," which must exist before the preemptive effect of 23 C.F.R. § 646.210 is applicable.

§ 116 specifically obligates state highway departments to maintain or cause to be maintained any project constructed with federal aid funds. The regulations promulgated under 23 U.S.C. § 116 at 23 C.F.R. § 650.607 state that maintenance work is not eligible for federal aid funding. Therefore, we find no express or implied intent to preempt in this case.

## II. JUST AND REASONABLE ALLOCATION

D & H also argues that the PUC's order, directing it to reimburse DOT for 50% of maintenance costs is not just and reasonable. The ALJ recommended that Conrail should not be assigned any maintenance responsibilities for the structure because it agreed to pay $25,800 to DOT, pursuant to the mutually negotiated contract. DOT, in effect, agreed to take over any maintenance responsibility which the ALJ could have assigned to Conrail.

In apportioning costs in highway-rail crossing cases, the PUC is not limited to any fixed rate but takes all relevant factors into consideration with the fundamental requirement being that its order be just and reasonable. *Department of Transportation v. Pennsylvania Public Utility Commission*, 76 Pa.Commonwealth Ct. 525, 464 A.2d 645 (1983).

D & H contends that the allocation to it of 50% of future maintenance costs for the crossing was unjust and unreasonable for two reasons. First, D & H submits that the future maintenance costs should have been assigned to DOT alone because D & H receives no benefit from the improvements. Second, assuming arguendo that DOT should not be held responsible for all future maintenance costs, D & H contends that allowing Conrail to satisfy its obligation for future maintenance by paying $25,800 to DOT was not reasonable. We do not agree.

The ALJ's assignment of maintenance costs to D & H were based on several factors. First, the ALJ noted the assignment of costs for the initial 1927 structure. We have held that maintenance responsibilities and construction costs assigned to railroads which previously operated at a crossing are relevant factors and can serve as a basis for cost allocation to the

current railroad, operating at the crossing. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission,* 55 Pa.Commonwealth Ct. 576, 423 A.2d 1108 (1980); *Pennsylvania Public Utility Commission v. Southeastern Pennsylvania Transportation Authority,* 21 Pa.Commonwealth Ct. 106, 343 A.2d 371 (1975).

Additionally, D & H claims that because it does not benefit from the crossing, it should not be allocated maintenance responsibility. However, the ALJ found that the rebuilt structure provides a safe interface between train and vehicular traffic and therefore, concluded that D & H benefitted from the crossing. In *Pennsylvania Department of Transportation v. Pennsylvania Public Utility Commission,* 79 Pa.Commonwealth Ct. 266, 469 A.2d 1149 (1983), we held that the benefit a party receives from a crossing is a relevant factor in assigning maintenance responsibilities. Therefore, because the ALJ's imposition of 50% of the maintenance expenses upon D & H was supported by substantial evidence,[8] we cannot find to the contrary.

Finally, D & H argues that it is neither fair nor reasonable that Conrail should be absolved of all maintenance responsibilities in exchange for a one-time lump-sum payment to DOT. Neither the ALJ nor the PUC, after considering these arguments, voiced concern. The ALJ assessed credibility to the witnesses, harmonized contradictory evidence and weighed the evidence. It is not within this Court's scope of review to reweigh such evidence in rejecting these arguments.

Accordingly, we must affirm.

## ORDER

AND NOW, this 4th day of August, 1992, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., dissents.

8. Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. *Pennsylvania Public Utility Commission v. Department of Transportation,* 21 Pa.Commonwealth Ct. 415, 346 A.2d 376 (1975).