642 A.2d 541

**GREENE TOWNSHIP BOARD OF SUPERVISORS, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 1994.

Decided May 12, 1994.

90

Bruce A. Barrett, for petitioner.

Scott H. DeBroff, for respondent.

David W. Donley, for intervenor.

Before SMITH and NEWMAN, JJ. and KELTON, Senior Judge.

NEWMAN, Judge.

Greene Township Board of Supervisors (Supervisors) petitions for review of an order of the Pennsylvania Public Utility Commission (PUC) directing Greene Township to reimburse Consolidated Rail Corporation (Conrail) for fifty percent of the costs incurred in preparing plans, performing work and providing materials to accomplish the removal of a wooden, one lane bridge and the construction of a roadway on a landfill at a crossing previously designated as Crossing No. 1. For the reasons set forth below, we vacate and remand the matter to the PUC.

The following facts are undisputed. Greene Township (Township) is a small, rural community located in Mercer County with a population of 1,234 residents. The bridge in question was built in 1944 by a predecessor of Conrail. While the Township maintains and plows all township roads, including Rogers Road which crosses the bridge at Crossing No. 1, the Township has never maintained any part of the bridge.

The responsibility for maintaining the bridge has always remained with Conrail.

The bridge became unnecessary, however, when Conrail ceased operating at this crossing and abandoned the rail line beneath the bridge. Therefore, Conrail sought and received approval in 1987 from the Interstate Commerce Commission (ICC) for the abandonment of rail service on that portion of the track on which the bridge is located. The bridge structure is currently owned by A & K Railroad Materials, Inc., which acquired an interest in Conrail's "Clarion Secondary Track" following regulatory approval of the rail service abandonment by the ICC.

On June 2, 1989, Conrail filed an application with the PUC to abolish thirty-one rail-highway crossings of its Clarion Secondary Track, including Crossing No. 1. The PUC, having received no objection from any other party, granted Conrail's application to abolish the majority of the crossings. The parties were unable to agree, however, on the disposition of Crossing No. 1 and three others. As such, the PUC ordered that hearings be scheduled before an Administrative Law Judge (ALJ) to resolve the issue of the four remaining crossings.

Following a hearing, the ALJ recommended, *inter alia,* that the bridge be removed at Crossing No. 1 and that the right of way be filled in so that a roadway could be constructed. The ALJ also recommended that the Township be responsible for performing the work and that the cost of the project be shared equally with Conrail. As such, the ALJ recommended that the PUC issue an order directing the Township to perform the work and Conrail to reimburse it for fifty percent of the costs.

On April 3, 1991, the Township filed exceptions, asserting that since the bridge was constructed to accommodate the installation of the railroad tracks below, it was unfair to require the Township to bear one-half of the costs of removing the bridge and constructing the roadway. Thereafter, the PUC, without addressing the merits of the exceptions, issued an order remanding the matter to the ALJ for consideration

of the Rails to Trails Act, Act of December 18, 1990, P.L. 748, *as amended,* 32 P.S. §§ 5611–5622. The PUC further directed that the Pennsylvania Department of Environmental Resources and the Pennsylvania Game Commission be made parties to the proceeding.

Following a hearing on remand, the ALJ recommended that Mercer County prepare the plans and perform the work necessary for the removal of the bridge and the construction of a roadway on the fill at Crossing No. 1. The ALJ further recommended that Conrail reimburse the County for one hundred percent of the associated costs. In generally discussing his reasons for the allocation of costs and maintenance responsibility, the ALJ noted that "[w]here a crossing is abolished by removing a structure, Conrail is the primary beneficiary because it is relieved of maintenance duty for its structure. Mercer County and the *local municipalities do not benefit."* ALJ's Recommended Decision Upon Remand at 36 (emphasis added). To this decision, exceptions were filed by A & K Railroad Materials, Inc., individually, and by A & K Railroad Materials, Inc. and Conrail, jointly.

Thereafter, the PUC issued an order which modified the ALJ's recommended decision upon remand and directed Conrail, instead of Mercer County, to prepare plans, perform work and furnish materials to accomplish the removal of the bridge and the construction of a roadway. The PUC's order further directed the Township to reimburse Conrail for fifty percent of its costs. Without making any specific findings of fact with respect to the benefits to be gained by either party, the PUC stated simply that "[t]his [apportionment], in our view, is appropriate since the road involved is a township road, and the Township will benefit from the road improvements made by Conrail's removal of the bridge structure and the construction of a highway on [the] fill." PUC's Decision and Order of August 10, 1993 at 8.[1] The Supervisors filed a petition for

1. We note that in its opinion, the PUC specifically adopted the ALJ's findings of fact and conclusions of law by reference "unless modified or reversed by [its] opinion and order." PUC's Decision and Order of August 10, 1993 at 4.

review with this court.[2]

■ On appeal to this court,[3] the Supervisors assert that the PUC's order directing the Township to reimburse Conrail for fifty percent of the aforementioned costs is not based upon substantial evidence of record. Specifically, the Supervisors assert that the record reveals that Conrail, or one of its predecessor railroads, constructed the original wooden bridge, reconstructed the bridge after it was destroyed by fire and, for years, assumed sole responsibility for the bridge's maintenance. It is the Supervisors' position that the PUC, in reaching its decision, completely ignored evidence of record that the bridge is used on a limited and infrequent basis by the Township's residents, that the bridge directly serves only two homes and that the Township's total population is a mere 1,234. According to the Supervisors, Conrail will reap the greatest benefit from the bridge's removal in that it will be relieved of its maintenance responsibility, with the only benefit to the Township being a slightly wider, and possibly a more level, road.[4]

■ As a preliminary matter, we note that PUC has exclusive authority, pursuant to Section 2702(b) of the Public Utility Code (Code), to determine the points at which, and the manner in which, rail-highways may be constructed, altered, relocated, suspended or abolished. 66 Pa.C.S. § 2702(b). Section 2704(a) of the Code further provides that the PUC has exclusive authority to assess the costs of any work which it orders to be performed in such proportions as it may determine to be proper. 66 Pa.C.S. § 2704(a). In apportioning

---

**2.** A & K Railroad Materials, Inc., Conrail and the Department of Transportation filed notices of intervention.

**3.** Our scope of review is limited to a determination as to whether constitutional rights were violated, an error of law was committed, findings of fact are supported by substantial evidence and whether the PUC violated its rules of practice. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission*, 155 Pa.Commonwealth Ct. 537, 625 A.2d 741 (1993).

**4.** However, the Supervisors also assert that the record does not show any accidents occurring at this site nor any delays or inconveniences to individuals using the existing roadway.

costs in rail-highway crossing cases, the PUC is not limited to any fixed rule but takes all relevant factors into consideration, with the fundamental requirement being that its order be just and reasonable. *D & H Corp. v. Pennsylvania Public Utility Commission,* 149 Pa.Commonwealth Ct. 507, 613 A.2d 622 (1992), *petition for allowance of appeal denied,* 534 Pa. 642, 626 A.2d 1160 (1993).

■ As such, the sole issue presented on appeal becomes whether the PUC's order, directing the Township to reimburse Conrail for fifty percent of the costs incurred in removing the bridge and constructing a roadway on the landfill at Crossing No. 1, is supported by substantial evidence and is just and reasonable.

In order to determine whether the PUC's allocation of costs is just and reasonable, we must examine the bases upon which the PUC's decision was founded. In this regard, we note that the PUC, without making additional findings of fact, simply stated that an equal allocation of the costs between the Township and Conrail is appropriate because the road involved is a township road and the Township will benefit from the road improvements made by Conrail's removal of the bridge and the construction of a roadway on the fill.

■ The law is clear in public utility cases that the PUC, not the ALJ, is the fact finder. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission,* 155 Pa.Commonwealth Ct. 537, 625 A.2d 741 (1993). The law is also clear, however, that when the fact finder in an administrative proceeding is required to set forth his findings in an adjudication, that adjudication must include all findings necessary to resolve the issues raised by the evidence and which are relevant to a decision. *City of Philadelphia v. Pennsylvania Public Utility Commission,* 73 Pa.Commonwealth Ct. 355, 458 A.2d 1026 (1983).

Specifically, Section 703(e) of the Code provides in relevant part:

After the conclusion of the hearing, the commission shall make and file its findings and order with its opinion, if any.

Its findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence.

66 Pa.C.S. § 703(e). This provision has been held to serve as explicit authorization for returning a matter to the PUC where the adjudication subject to review is insufficiently detailed to permit the reviewing court to assess the sufficiency of the evidence in support of the PUC's findings and to evaluate the PUC's resolution of the controverted legal issues. *National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission*, 76 Pa.Commonwealth Ct. 102, 464 A.2d 546 (1983).

A review of the PUC's decision and order in this case reveals that the PUC modified the recommended decision of the ALJ without making additional findings of fact. Moreover, the PUC failed to give any indication as to the relevant factors which it took into consideration in reaching its decision and the weight it afforded the evidence. Specifically, the PUC's decision failed to justify its allocation of fifty percent of the aforementioned costs to the Township. We are particularly troubled by this failure given that the amount of these costs is uncertain.

We note that the PUC quoted from Conrail's exceptions to the ALJ's recommended decision upon remand, and we also acknowledge that this court has previously held that there is nothing inherently objectionable in the PUC's reliance on a party's exceptions as a means of explaining the basis for its conclusions. *Consolidated Rail Corp.* However, in the case presently before us, we conclude that absent a more detailed discussion regarding the bases upon which the PUC's allocation of costs was founded, we are unable to conduct meaningful appellate review.

Accordingly, we are compelled to vacate the order of the PUC and to remand the matter for additional findings of fact and a discussion of the factors which the PUC took into consideration and the weight it afforded the evidence in

equally apportioning between the Township and Conrail the costs of preparing plans, performing work and providing materials to accomplish the removal of a bridge and the construction of a roadway on a landfill at Crossing No. 1.

## ORDER

AND NOW, May 12, 1994, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is vacated and the matter is remanded to the PUC for additional findings of fact and a discussion of the factors which the PUC took into consideration and the weight it afforded the evidence in equally apportioning between Greene Township and Consolidated Rail Corporation the costs of preparing plans, performing work and providing materials to accomplish the removal of a bridge and the construction of a roadway on a landfill at a crossing previously designated as Crossing No. 1.

Jurisdiction relinquished.