**BELL ATLANTIC–Pennsylvania, Inc., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1995.
Decided Dec. 18, 1995.
Publication Ordered March 1, 1996.

Thomas J. Sniscak; for Petitioner.

Susan D. Colwell, Assistant Counsel, for Respondent.

Gina M. D'Alfonso, Assistant Counsel in Charge, for Department of Transportation.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Bell Atlantic—Pennsylvania, Inc. (Bell) petitions for review of the November 14, 1994 order of the Pennsylvania Public Utility Commission (Commission) that adopted the May 31, 1994 recommended decision of the Administrative Law Judge (ALJ) requiring Bell to bear the costs of relocating its facilities at a rail-highway crossing and to pay the Pennsylvania Department of Transportation (DOT) for expenses it incurred in moving Bell's facilities located at that crossing.

The issues as presented by Bell are: (1) whether the Commission committed reversible error in failing to apply its own four-part test in determining a just and reasonable allocation of expenses in a rail-highway crossing case; (2) whether the Commission's decision was supported by substantial evidence; and (3) whether the decision of the Commission was arbitrary and capricious, represented an abuse of discretion and violated Bell's due process rights in that the Commission issued an order in a factually similar matter on the same day with the opposite result.

I

On January 28, 1988, the Commission entered an order approving DOT's application for the alteration of the rail-highway crossing at the intersection of Girard and Belmont Avenues in Philadelphia, including the replacement of a five-span bridge originally built in 1907. Amtrak and Conrail own the railroad right-of-way beneath the bridge, and SEPTA operates rail commuter service on Amtrak's tracks beneath the bridge and a trolley line on the bridge. Philadelphia Electric Company, Philadelphia Gas Works and Bell all maintain facilities within the public right-of-way at the crossing. Bell's facilities consist of underground cables, conduits and manholes. On June 3, 1993, DOT advised the Commission that the alteration was completed and, on September 23, 1993, the ALJ held a hearing on the application to allocate the associated costs.

Bell presented the testimony of David Huffnagle, Assistant Manager of Outside Facilities in Bell's Engineering Department. Regarding the condition of Bell's facilities at the crossing, Huffnagle testified that the average service life for conduits is approximately 64 years, that the average service life for underground cable is approximately 30 years and that a majority of the cable was near the end of its estimated or average service life or had surpassed it. Although he believed the average service life was "about the same" for new and old cable, Huffnagle admitted that the new cable was probably of better quality. Huffnagle also admitted that Bell prefers to locate its facilities in the public right-of-way, when possible, because Bell can obtain a permit and is protected from the infringement of all other utilities that occupy the street, and Bell is not required to maintain the highway right-of-way in which its facilities are located.

Bell also presented into evidence Bell's Statement No. 1, which included Huffnagle's prepared direct testimony that Bell incurred a cost of $379,082.09—later corrected to $378,682.09—for the relocation of its facilities, and accompanying exhibits. Huffnagle also stated Bell's position regarding who should bear its relocation costs:

> Bell does not agree to bear any of the costs to relocate its facilities associated with this project. Bell believes that the Commission should allocate the costs of the project to whomever it determines has caused these costs to be incurred, or whoever benefitted from the project. Since PENNDOT initiated this project, it is both the cost-causer and the beneficiary of the project, and it should bear 100% of Bell's relocation costs.

Bell's Statement No. 1 at 7–8.

DOT presented the testimony of James B. Ottinger, DOT's Utility Manager for District 6, who testified that DOT initially assumed relocation costs for Bell totalling $157,397.71,

for which it sought reimbursement. Ottinger also testified that DOT would reimburse Conrail, Amtrak and SEPTA for their engineering and construction costs associated with the construction of the bridge and that DOT agreed to reimburse any utility for costs incurred to relocate facilities that were originally located in a private right-of-way. Ottinger testified, however, that DOT did not agree to reimburse any privately-owned non-carrier utility company for costs incurred to relocate facilities that were originally located in the public right-of-way, such as those incurred by Bell.

The ALJ found that Bell benefitted from its occupation of the public right-of-way, that all of Bell's facilities at the crossing had either surpassed or were near the end of their service lives, that the relocation resulted in a betterment of Bell's facilities and that Bell's betterment of $8,103 outweighed its removal cost of $2,665.64. The ALJ concluded that Bell should bear all the costs of relocating its facilities and that Bell must reimburse DOT $157,397.71 for the cost DOT incurred on behalf of Bell. Bell filed exceptions to the ALJ's recommended decision, which were essentially the same as the issues presented to this Court. By final order dated November 14, 1994, the Commission denied Bell's exceptions and adopted the ALJ's recommended decision.[1]

## II

Bell argues that the Commission failed to apply its four-point analysis for allocating utility relocation expenses as stated in its decision in *Application of the City of Wilkes–Barre,* (Docket No. A–101606, filed April 9, 1981).[2] Bell also argues that the Commission's decision was unsupported by substantial evidence where the Commission considered only irrelevant factors in deciding the allocation of expenses; and that the Commission's decision was arbitrary and capricious, and represented an abuse of discretion and a violation of Bell's right to due process, where the Commission applied a reasoned analysis consistent with *Wilkes–Barre* in a similar decision decided on the same day, but not in the present case.

The Commission has the exclusive authority to determine the manner in which rail-highway crossings may be constructed, altered, relocated, suspended or abolished, 66 Pa.C.S. § 2702, and to assess the costs of that work in such proportions as the Commission determines to be proper, unless such proportions are mutually agreed upon by the parties involved. 66 Pa.C.S. § 2704(a). Initially, it must be noted that prior adjudications of the Commission have no precedential value before this Court. *Standard Fire Ins. Co. v. Insurance Department,* 148 Pa. Cmwlth. 350, 611 A.2d 356 (1992). Nor is an administrative agency bound by the rule of *stare decisis;* however, as Bell correctly notes, an administrative agency must render consistent opinions and should either follow, distinguish or overrule its own precedent. *Id.*

Contrary to Bell's arguments, a review of the Commission's decision in *Wilkes–Barre* reveals that there is no fixed four-part test. The *Wilkes–Barre* decision merely acknowledges that various factors have been used by the Commission in allocating costs and the Commission is "not limited to any fixed rule, but may consider any *one or more* of the above recited factors, depending upon the facts peculiar to each case." *Id.,* slip op. at 4 (emphasis in original). This principle has been also accepted by this Court. *See*

---

1. This Court's scope of review in the present case is limited to determining whether the Commission's findings are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. *White Rock Sewage Corp. v. Pennsylvania Public Utility Commission,* 133 Pa.Cmwlth. 608, 578 A.2d 984 (1990).

2. The *Wilkes–Barre* decision was provided at Appendix A to the Commission's brief. *Wilkes–Barre* provides:

> The Courts and the Commission have considered various factors in reaching a conclusion regarding the appropriate allocations of costs including; (1) the benefit received by the ratepayers of the particular utility ... (2) the availability of state and/or Federal funding for a project ... (3) the placing of the costs upon the party responsible for the situation ... *and* (4) the equities of a particular situation....
>
> *Id.,* slip op. at 3–4 (citations omitted).

*Greene Township Board of Supervisors v. Pennsylvania Public Utility Commission,* 164 Pa.Cmwlth. 88, 642 A.2d 541 (1994) (in assessing the costs in rail-highway crossing cases, the Commission is not limited to any fixed rule but takes all relevant factors into consideration, with the fundamental requirement being that its order be just and reasonable).

Because the Commission is not required to limit itself to any or all of the factors enumerated in *Wilkes–Barre,* Bell's argument that the Commission erred by not analyzing the present case under its "four-part test" is without merit. As Intervenor, DOT points out that the Commission is free to determine which factors are relevant in assessing costs within the context of the particular case before it. 66 Pa.C.S. § 2704(a); *Greene Township Board of Supervisors.* Thus Bell's argument that its due process rights were violated by a change, without notice, to the Commission's so-called "established or recognized course of conduct" must also fail.

■ To buttress its argument that the Commission's decision is not supported by any evidence, substantial or otherwise, Bell attacks that decision for failing to quantify the amount of Bell's benefit. Specifically, Bell contends that there is no evidence in the record to support the ALJ's conclusion that Bell's ratepayers received an additional benefit beyond that already subtracted by Bell for betterment of its facilities; that any facilities were in need of being replaced or would have been replaced; or that the benefit of newer facilities was exactly equal to Bell's relocation costs plus the costs of DOT's labor. Bell further contends that the ALJ's conclusion that Bell gained some unquantified benefit from having its facilities located in the public right-of-way is without any factual support in the record.

■ The benefit a party receives from a crossing is a relevant factor in assigning maintenance responsibilities, *D & H Corp. v. Pennsylvania Public Utility Commission,* 149 Pa.Cmwlth. 507, 613 A.2d 622 (1992),

appeal denied, 534 Pa. 642, 626 A.2d 1160 (1993); however, there is no requirement that the benefit be assigned a specific dollar value or that the costs allocated to a party be limited to the value of the benefit received. *See Pennsylvania Game Commission v. Pennsylvania Public Utility Commission,* 651 A.2d 596 (Pa.Cmwlth.1994), *appeal denied,* —— Pa. ——, 664 A.2d 977 (1995) (in a review of the Commission's decision to allocate costs for the removal of a rail-highway crossing, this Court held that the elimination of safety hazards and better access to game lands resulted in a benefit sufficient for allocating 25 percent of the entire cost associated with the removal of certain crossings, even though the benefit was not defined by a dollar amount).[3]

Huffnagle's testimony represents substantial evidence to support the Commission's findings that Bell's facilities have been improved as a result of the relocation. Huffnagle admitted that a majority of the cables installed by Bell had surpassed or had been nearing the end of their estimated average service life and that Bell's facilities were improved because the original cables were replaced with better quality cables. Huffnagle also described the ways in which Bell derived benefit through its occupation of a public right-of-way. Even Huffnagle suggested, in Bell's Statement No. 1, that the Commission should allocate the costs to whoever benefitted from the project.

This Court also rejects Bell's contention that the determination that Bell was required to reimburse DOT is without factual support in the record and has no reasoned explanation. Bell asserts that the betterment in question occurred outside the jurisdictional area of the crossing; however, the record reveals that Bell listed this betterment in Exhibit 2–A, entitled "Belmont & Girard Bridge Reconstruction Conduit Work" as well as in Exhibit 2–C, entitled "Belmont & Girard Bridge Reconstruction Total Cost Summary." Furthermore, Huffnagle admitted:

> This is part of the job, the betterment is for some conduits that we built in Belmont

---

**3.** *See also D & H Corp.* (the benefit of a safe interface between train and vehicular traffic provided by the rebuilt structure, to which no specif-

ic dollar amount was assigned, was sufficient for allocating 50 percent of future maintenance costs of the reconstructed crossing).

Avenue going north in a part of the roadway that was going to be reconstructed, where we were not in need of new conduits at that time. The existing conduit was near capacity, and in an effort to not have to open the street again at some later time, we put the conduits in advance of the paving. So when our facilities did exhaust, we would have a route to follow without disturbing the surface.

Commission's Decision at 133–134.

■ The Commission's decision included a detailed discussion of the Commission's reasons for assigning costs to the various parties involved in the alteration project. This Court may not substitute its judgment for that of the Commission or engage in the processes of weighing evidence or resolving conflicting testimony. *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 61 Pa.Cmwlth. 325, 433 A.2d 620 (1981). Because the Commission's decision is just and reasonable and is supported by substantial evidence, its order requiring Bell to bear its costs of relocating its facilities and to reimburse DOT for expenses incurred on Bell's behalf must be affirmed.

### ORDER

AND NOW, this 18th day of December, 1995, the order of the Pennsylvania Public Utility Commission is affirmed.